IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**EVITTA MONIQUE WRIGHT**                                            **PLAINTIFF**

**v.**                                            **Civil No. 3:23-cv-03044-TSL-BWR**

**COMMISSIONER OF SOCIAL**                                            **DEFENDANT**
**SECURITY,** *Kilolo Kijakazi, Acting*
*Commissioner*

## REPORT AND RECOMMENDATION

Evitta Monique Wright (Plaintiff), proceeding *in forma pauperis*, seeks judicial review of the Commissioner of Social Security Administration's final decision denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). Compl. [1]. Plaintiff filed a Brief [11], Defendant, Commissioner of Social Security (Commissioner), filed a Response [14], and Plaintiff did not file a rebuttal. Having considered the parties' submissions, the Administrative Record [9], and applicable law, the undersigned recommends affirming the Commissioner's decision.

### I.   BACKGROUND

Plaintiff applied for SSI on March 29, 2022, alleging disability beginning March 10, 2022 when she was 36 years old because of rheumatoid arthritis and tendinopathy. Admin. R. [9] at 46. Plaintiff has a high school education and no relevant past work. *Id.* at 41, 55.

The Social Security Administration (SSA) denied Plaintiff SSI benefits on May 18, 2022, and upon reconsideration. *Id.* at 59-62, 67-68. Plaintiff requested a hearing

1

before an Administrative Law Judge (ALJ), and a telephonic hearing was held on April 10, 2023. *Id.* at 32, 69. At the administrative hearing, Plaintiff testified that she suffers from arm and leg pain, swollen feet if she stands for over an hour, hand numbness, tingling in her left arm and right foot, and overall throbbing and severe pain. *Id.* at 40. Plaintiff also stated she has trouble driving and worked for one week in January 2023. *Id.* at 38-39. A vocational expert testified that medium unskilled positions existed in the United States economy that Plaintiff could perform. *Id.* 41-42. Plaintiff was not represented by counsel. *Id.* at 35.

On May 2, 2023, the ALJ issued Plaintiff an unfavorable decision. *Id.* at 15-22. In determining Plaintiff was not disabled, the ALJ applied the five-step sequential analysis outlined in 20 C.F.R. § 416.920(a). *Id.* at 16-22. At step one, the ALJ determined that claimant worked after the application date, though not to the level of substantial gainful activity, and this work supported finding Plaintiff able to engage in gainful work activity. *Id.* at 17. At step two, the ALJ found that Plaintiff suffered from the severe impairments of obesity and fibromyalgia. *Id.* at 18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 because there is no listing applicable to obesity and fibromyalgia. *Id.* The ALJ stated that the limiting effects of obesity are considered when determining residual functional capacity (RFC)[1] and that Plaintiff's fibromyalgia diagnosis aligned with record evidence. *Id.* At step four, the ALJ found

---

[1] The residual functional capacity is defined as "the most [an individual] can still do despite [their] limitations . . . based on all the relevant evidence in [their] case record." 20 C.F.R. § 404.1545(a)(1).

2

that Plaintiff had the RFC "to perform medium work as defined in 20 CFR § 416.967(c) except she can occasionally push/pull with the right upper extremity." *Id.* at 18-21. Relying on vocational expert testimony, the ALJ determined at step five that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including laundry worker, inspector, and machine tender. *Id.* at 21-22. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision and subject to judicial review under 42 U.S.C. § 405(g). *Id.* at 5-8.

Plaintiff's brief asserts "the ALJ erred in [her] analysis of the medical opinions" and alleges that the ALJ did not create a discernable "logic bridge" between the medical opinions and the persuasiveness finding. Pl.'s Br. [11] at 3, 7. But the brief discusses only one medical opinion, Dr. Morris's. *Id.* Plaintiff alleges that the ALJ "fail[ed] to sufficiently 'explain' the supportability and consistency factors of this medical opinion creating prejudicial and reversible error." *Id.* at 4. Plaintiff claims the ALJ improperly "discredit[ed] the favorable opinion by Dr. Morris because this Plaintiff was engaged in SGA work activity one month in January of 2023," and "[o]ne quarter of work activity should not disparage an opinion by a physician." *Id.* Plaintiff believes that "[a]ny work activity Plaintiff had during the relevant period should have been evaluated as an unsuccessful work attempt." *Id.*

Defendant counterargues that Dr. Morris's opinion that Plaintiff "should be considered disabled from any meaningful work that requires standing, walking, driving, or any lifting or manipulations with her hands and arms" is a statement on

3

an issue reserved to the Commissioner that the ALJ was not required to analyze. Def.'s Br. [14] at 3. Defendant notes that the ALJ nevertheless evaluated Dr. Morris's statement as if it were a medical opinion, finding that it was not supported by Dr. Morris's own treatment records, Dr. Morris's own examination findings, Plaintiff's testimony about working after she applied for disability, and the consultative examination performed by Dr. Jennings, who found no objective findings to suggest functional limitations in activities of daily living. *Id.* at 4-7. Defendant asserts that the ALJ applied the correct legal standards, and the decision is supported by substantial evidence. *Id.* at 9.

## II. DISCUSSION

### A. Standard of review

The standard of review in Social Security appeals is narrow: the Court asks only whether "(1) the final decision is supported by substantial evidence and (2) . . . the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). "Substantial evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence 'must be more than a scintilla[,] it need not be a preponderance.'" *Id.* (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)).

"To determine whether a claimant is disabled, the Commissioner's analysis proceeds along five steps." *Id.*; *see* 20 C.F.R. § 416.920(a)(4). The Commissioner considers (1) whether the claimant is engaged in substantial gainful activity, (2) the severity and duration of the claimant's impairments, (3) whether the claimant's

impairment meets or equals one of the Listings, (4) whether the claimant can still do past relevant work, and (5) whether the impairment prevents the claimant from doing any relevant work. *Webster,* 19 F.4th at 718. "The claimant bears the burden on the first four steps. If the claimant advances that far, the burden shifts to the Commissioner to 'prove the claimant's employability.'" *Id.* (quoting *Keel v. Saul,* 986 F.3d 551, 555 (5th Cir. 2021)).

For claims filed after March 27, 2017, such as Plaintiff's, "ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and [Fifth Circuit] caselaw in the past." *Webster,* 19 F.4th at 718-19 (5th Cir. 2021); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853-57. The new regulations abandoned the treating physician rule and with it the requirement that ALJs provide a detailed, multi-factor justification if giving these opinions little or no weight. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (discussing treating physician rule). The new regulations provide: "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from your medical sources." 20. C.F.R. § 416.920c(a).

Under the current regulations, ALJs must determine the persuasiveness of experts' opinions using five factors: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) a catchall provision for "other factors that tend to support or contradict" the opinion. *Id.* at (c). ALJs are required to address only two factors in their decisions: supportability and consistency.

5

*Id.* at (b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* at (c)(1). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . ." *Id.* at (c)(2). "Relationship with the claimant" is a persuasiveness factor, *id.* at (c)(3), and the rules "continue to allow an adjudicator to consider an individual's own medical source's medical opinion to be the most persuasive medical opinion if it is both supported by relevant objective medical evidence and the source's explanation, and is consistent with other evidence, as described in final . . . 416.920c." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853.

B. <u>Analysis</u>

The record contains medical opinions from examining consultative medical source Miller Jennings, M.D.; non-examining state agency medical sources Moses Izuegbu, M.D. and Roland Gutierrez, M.D.; and Plaintiff's treating physicians Larry Daniel Field, M.D., Kristen C. Crawford, M.D., and Jefferey Andrew Morris, M.D. Dr. Jennings's examining consultative report was issued in May 2022, Dr. Izuegbu's findings in May 2022, and Dr. Gutierrez's findings in July 2022. Dr. Field's treatment records reflect one visit in April 2022. Dr. Crawford's records show treatment once in November 2021 and once in March 2022. Dr. Morris's treating records show that Plaintiff received treatment three times during the alleged fifteen-month disability

period from March 29, 2022 to May 2, 2023 – twice in 2022 (April 20 and November 2), and once in 2023 (March 28). Admin. R. [9] at 247-61.

The ALJ acknowledged Dr. Morris's opinion that Plaintiff should be considered disabled from any meaningful work that requires standing, walking, driving or any lifting or manipulation with her hands and arms. *Id.* at 252. Dr. Morris's statement that Plaintiff is disabled is "[e]vidence that is inherently neither valuable nor persuasive" because it is a statement about whether a claimant is or is not disabled, a statement on an issue reserved to the Commissioner. 20 C.F.R. § 416.920b(c)(3). The ALJ was not required to provide an analysis regarding Dr. Morris's ultimate finding of disability.

"For supportability, the regulations provide that '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." *Miller v. Comm'r of Soc. Sec.*, No. 1:20-cv-194-HSO-RPM, 2022 WL 566175, at *5 (S.D. Miss. Feb. 24, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)).

The ALJ considered the supportability of Dr. Morris's opinion. The ALJ highlighted that Dr. Morris's opinion was not supported by Dr. Morris's own treatment notes because in April 2022 and November 2022, Dr. Morris's examination findings were unremarkable, showing Plaintiff had normal gait and balance, range of motion, and no edema, cyanosis, no joint effusion, or crepitus, no acute bony abnormalities, or clubbing in Plaintiff's extremities. Admin. R. [9] at 251-61. The ALJ

7

pointed out that Plaintiff reported suffering from "'intermittent' numbness or tingling that was 'sometimes' painful" to Dr. Morris in November 2022 *Id.* at 21, 251. But Dr. Morris's treatment notes indicate that Plaintiff exhibited normal findings upon examination. *Id.* at 254-55.

Plaintiff also engaged in gainful work activity three months before her hearing with the ALJ occurred and Dr. Jennings did not find that Plaintiff's claimed limitations affected her daily living activities. *Id.* at 21. In describing her functional abilities, Plaintiff expressed that she could drive, prepare meals, adequately manage her finances, need not be accompanied outside her home, and that her hobbies include watching television and talking to family on the telephone. *Id.* at 189-191, 237. The ALJ sufficiently and logically discussed that there was no support in Dr. Morris's treatment notes to justify his opinion of Plaintiff's disability given his normal medical findings and Plaintiff's functional status. *Id.* at 21. *See Hartfield v. Comm'r of Soc. Sec.*, No. 1:22-cv-316-HSO-LGI, 2024 WL 1283821, at *4 (S.D. Miss. Mar. 26, 2024) (observing that the ALJ addressing treatment notes sufficiently addressed supportability because it addresses evidence on which an opinion is based).

As for consistency, "the regulations provide that '[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.'" *Miller*, 2022 WL 566175, at *6 (citing 20 C.F.R. § 404.1520c(2)); *see Thompson v. Soc. Sec. Admin.*, No. 23-30702, 2024 WL 1886757, at *2 (5th Cir. Apr. 30, 2024).

8

The ALJ considered the consistency of Dr. Morris's opinion, which was inconsistent with Dr. Jennings's medical opinion. Dr. Jennings provided a consultative exam in May 2022 and found no objective findings to suggest functional limitations in activities of daily living. Admin. R. [9] at 20-21. Plaintiff's neurological and musculoskeletal examinations were normal, with no palpable muscle spasms, negative straight-leg-raise testing, and normal gait, bulk, tone, and strength. *Id.* at 237-39. Dr. Jennings found Plaintiff had five out of five strength in all extremities and normal range of motion, demonstrating normal functioning. *Id.* at 239. Dr. Jennings noted that Plaintiff needed no assistance to walk or get on and off the examination table. *Id.* at 20, 238. The ALJ also considered an April 2022 MRI of Plaintiff's neck that showed no abnormalities. *Id.* at 19. In addition, Dr. Morris's treatment records indicate that Plaintiff had irregular pain, and normal musculoskeletal and neurological exams with normal range of motion, no joint effusion or crepitus, no acute bony abnormalities, and a normal gait and balance. *Id.* at 251-255, 257-58, 260.

The ALJ considered whether Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms aligned with her daily activities and found they did not. *Id.* at 19. Plaintiff testified that she struggles to drive and does not perform household chores due to severe pain in her arms and legs. *Id.* at 38-39. But Plaintiff informed Dr. Jennings that she can drive, "sit, walk, stand, and lift without considerable difficulty," and can perform chores such as sweeping, mopping, cooking, and doing the dishes. *Id.* at 237.

The ALJ concluded "the claimant is independent in her activities of daily living." *Id.* at 20. She noted Plaintiff's testimony that Plaintiff "worked about a week in January 2023" and wage records showing some earnings in the third quarter of 2022. *Id.* at 17. The ALJ found Plaintiff's "work activity does demonstrate her ability to engage in gainful work activity." *Id.* She observed that Plaintiff left her job as a cashier four days before she saw Dr. Jennings in May 2022, supporting the ALJ's contention that Plaintiff has the capacity for gainful work activity. *Id.* at 20.

The ALJ emphasized that "[d]espite her weight and residual from fibromyalgia, the claimant has worked." *Id.* at 20. In support, the ALJ listed personal activities Plaintiff engaged in without considerable difficulty, including independent personal care, climbing stairs, taking care of her two children and getting them to school, shopping for groceries and household items, keeping a checkbook, and paying bills. *Id.*

Plaintiff claims that the ALJ improperly considered Dr. Morris's favorable opinion because Plaintiff engaged in slight work activity before her hearing. Pl.'s Br. [11] at 4. Plaintiff informed Dr. Jennings that she had previously worked as a cashier and Dr. Jennings found that Plaintiff's "range of motion of the elbows, forearms, wrists, hands, shoulders, cervical spine, lumbar spine, hips, knees, and ankles were all normal." Admin. R. [9] at 20, 239. Rather than discredit Dr. Morris's opinion based on Plaintiff's work activity, the ALJ found the opinion unpersuasive considering Plaintiff's normal objective medical findings and her "ability to engage in gainful work activity." *Id.* at 17; *see Sea-Land Servs., Inc. v. Dir., Off. of Workers' Comp.*

*Programs*, 949 F.3d 921, 926-27 (5th Cir. 2020) ("[A]n ALJ may give less weight to a treating physician's opinion when there is good cause shown to the contrary.").

The ALJ's finding of no disability is supported by substantial evidence, which includes a lack of support and consistency in Dr. Morris's records for a finding of disability, Dr. Jennings's medical opinion, and Plaintiff's daily activities. *See Dickerson v. Kijakazi*, No. 5:22-cv-23-DCB-LGI, 2023 WL 5487355, at *3 (S.D. Miss. Aug. 24, 2023). Dr. Morris opined that Plaintiff should be considered disabled and Plaintiff complained of intermittent numbness or tingling that was sometimes painful. Admin. R. [9] at 20-21. The ALJ was not persuaded by Dr. Morris's opinion or Plaintiff's statements because they are inconsistent with Plaintiff's unremarkable medical evaluations describing Plaintiff's normal gait and balance, range of motion, and reflexes. Further, they are unsupported by Plaintiff's testimony, function report, and ability to engage in substantial gainful activity. "Plaintiff has failed to show consistent objective medical evidence to support her allegedly severe medical impairments." *Dickerson*, 2023 WL 5487355, at *1.

The record shows that the ALJ considered the entire record and found Dr. Morris's opinion less persuasive, "which the ALJ has the discretion to do so long as there is support in the record." *Id.* at *3. The ALJ's analysis demonstrates what evidence was considered and why the ALJ reached her decision of no disability, building an accurate and logical bridge between the evidence and the ALJ's persuasiveness findings. *See Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010); *see Miller*, 2022 WL 566175, at *5.

## III. RECOMMENDATION

For the reasons stated above, the undersigned United States Magistrate Judge recommends affirming the Acting Commissioner's decision.

## IV. NOTICE OF THE RIGHT TO OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 9th day of December 2024.

*s/ Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE